## CUMMINS *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.

1. Insurance—Life Insurance—Double Indemnity—Accident—Inferences—Evidence.

   An inference of accident may not be drawn from record in action on double indemnity for accidental death clause of life insurance policy, where there is no testimony as to how assured's death was occasioned, his body having been discovered floating in a lake without cuts, bruises or abrasions on the body and no rips, tears or unusually dirty spots on the clothing some 2 days after he had disappeared without having taken along fishing equipment or using a boat and no autopsy was performed, since there is no proof of death due to violent, external means or unnatural causes.

2. Same—Double Indemnity—Accident—Burden of Proof.

   The burden is on plaintiff in an action under a double indemnity for accidental death clause of life insurance policy to establish that death was accidental.

3. Evidence—Presumptions.

   A rebuttable presumption disappears upon the introduction of testimony.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur, Insurance § 939.
[2, 5] 29 Am Jur, Insurance § 1450.
[3] 20 Am Jur, Evidence § 160 *et seq.*
[4] 20 Am Jur, Evidence § 220.
[6] 3 Am Jur, Appeal and Error § 957.

4. DEATH—SUICIDE—PRESUMPTIONS—EVIDENCE.
   The presumption against suicide disappears upon introduction of testimony to rebut it.

5. INSURANCE—DOUBLE INDEMNITY—ACCIDENT—EVIDENCE.
   A plaintiff fails to make out a case for recovery under a double indemnity for accidental death clause of life insurance policy, where there is an absence of proof tending to establish one of several equally reasonable theories as to cause of death, some consistent with the theory of accidental death and some inconsistent with it.

6. APPEAL AND ERROR—COMMON PLEAS COURT—CIRCUIT COURT—SUPREME COURT—PREPONDERANCE OF EVIDENCE.
   Reversal of common pleas court by circuit court will be upheld by the Supreme Court, where the evidence did clearly preponderate against the finding and judgment of the court of common pleas even though the circuit court may not have expressly so found.

Appeal from Wayne; Miller (Guy A.), J. Submitted June 10, 1953. (Docket No. 76, Calendar No. 45,885.) Decided October 5, 1953.

Action by Pauline Cummins against John Hancock Mutual Life Insurance Company for double indemnity under life insurance policy. Judgment was for plaintiff in common pleas court. On appeal to circuit court the judgment was reversed. Plaintiff appeals. Affirmed.

*Hughes, Hollis & Norton,* for plaintiff.

*Dickinson, Wright, Davis, McKean & Cudlip (Daniel J. Tindall, Jr.,* and *Richard C. Van Dusen,* of counsel), for defendant.

DETHMERS, C. J. Plaintiff, named beneficiary in a life insurance policy, after collecting the ordinary death benefits, sued in the common pleas court for the city of Detroit on the double indemnity clause for the additional benefits provided in the event assured died "as a result of bodily injuries sustained solely

through external, violent, and accidental means, directly and independently of all other causes". Judgment entered for plaintiff, which was reversed on defendant's appeal to the circuit court, and from judgment of no cause for action there plaintiff appeals here.

Material facts are as follows: Assured, 55 years of age, had enjoyed good health and been regularly and gainfully employed for over 27 years. He was happily married, had 1 adult son living at home contributing to the family finances, and was free from financial worries. He never discussed or mentioned suicide. On April 20, 1950, he submitted to an emergency appendectomy. After being discharged from the hospital he failed to regain full health and strength, was readmitted to the hospital on May 15th, remaining there until June 1st, and again on June 22d he returned to the hospital, was transferred to its neuropsychiatric service on July 5th and stayed there until July 11th, when he returned home, but never went back to work. He was last seen alive by his wife on July 28th, when he arose at 6 o'clock in the morning, dressed, ate no breakfast, got into his car and drove away before his wife had arisen and without telling her where he was going. Although she was awake, she did not question him nor get up. At 7:30 a.m. his automobile was discovered parked along the roadside near a lake some miles distant from his home. He had taken no fishing equipment with him, no boat was missing, and he had been dressed in business clothes. Two days later his body was found floating in the lake 75 to 100 yards from shore at a point where the water was deep and the banks steep, near a public park and boat livery. There were no cuts, bruises or abrasions on the body and no rips, tears or unusually dirty spots on the clothing. His billfold and personal belongings were in his pockets. No autopsy was performed but the

coroner, a physician, made an external examination only. He filed a death certificate stating that assured had walked into the lake and that the death was suicide. Thereafter he altered the certificate to ascribe death to accidental drowning. There were no proofs of how the body came into the water, nor was anything further shown as to the nature, means or cause of death.

Although the coroner testified that assured's death was by drowning, he admitted that his opinion was based entirely on the single fact that the dead body was found floating in a lake. That leaves plaintiff's theory of the case, upon which reliance is had for right to recover, stripped essentially to the following:

1. Assured's dead body having been found floating in a lake and there being no other proofs of the means of death, it must be presumed to have resulted from drowning.

2. Drowning being presumed, and there being no proofs of how it was occasioned, it must be presumed to have been nonsuicidal.

3. Indulging the presumption against suicide, the death must be presumed to have been accidental.

4. The presumptions against suicide and in favor of accident are strong ones, which stand as evidence unless overcome by proofs of the most convincing nature.

5. Defendant did not adduce convincing proofs of suicide, failed to meet the burden of proof reposing on it in that respect, and, therefore, the presumption against suicide stands as evidence of accident.

6. On the strength of the above presumptions and defendant's failure to rebut them, plaintiff has established a case of death through external, violent and accidental means and is, therefore, entitled to recover.

Michigan cases relied upon to support plaintiff's theory are: *Wishcaless* v. *Hammond, Standish & Co.,* 201 Mich 192; *Turner* v. *Mutual Benefit Health & Accident Assn.,* 316 Mich 6; *Burnham* v. *Interstate Casualty Co.,* 117 Mich 142; *Curth* v. *New York Life Insurance Co.,* 274 Mich 513.

*Wishcaless* was a workman's compensation case in which, under the statute, findings of fact of the commission that death was accidental must be accepted by the Court if supported by any competent testimony. The Court observed that there was testimony in the case from which the inference of accidental death could reasonably be drawn and this supported the presumption against suicide noted by the Court in that case. Plaintiff enjoys the benefit of no such statutory provision here, nor is there testimony in the record showing facts from which the inference of accident may be drawn. Plaintiff's reliance is on presumptions, not inferences.

In *Curth* defendant insurance company denied liability under a life insurance policy which provided that neither the face benefits or double indemnity should be payable if death resulted from self-destruction within the first 2 insurance years. It was established that death resulted from gunshot wounds. Defendant planted its entire defense on the claim of suicide. Accordingly, we said in that case that the burden of proof on the issue of suicide rested upon defendant and needed to be established by a preponderance of the evidence. That rule was applicable there because defendant sought escape from liability for the face amount of the policy under an exceptions clause or condition subsequent, thus invoking an affirmative defense which placed the burden of proof of suicide upon the defendant; the rule is not applicable here, where the burden is on the plaintiff, in suit on a double indemnity clause, to establish accidental death. *Dimmer* v. *Mutual Life*

*Insurance Co.*, 287 Mich 168. In *Curth* this Court said concerning the presumption against suicide:

"When testimony is offered to rebut this presumption, as was done in the instant case, the presumption that death did not result from suicide disappears and is not to be treated as evidence by the jury in reaching a verdict."

Despite the fact, however, that rebuttal testimony was offered in that case, thus causing the presumption against suicide, as this Court said, to disappear, we nonetheless affirmed judgment for plaintiff because there was undisputed proof of physical facts, which this Court found well nigh precluded the possibility of suicide or, at least, supported the theory against it. In the instant case there is evidence in rebuttal of the presumption and none to support the theory against suicide.

In *Burnham* there was testimony of an examining physician that the body of the deceased presented the ordinary symptoms of death by suffocation or drowning, such as face congested and bloody froth and mucous from lips and nostrils after he had been seen swimming in a lake. This amounted to direct evidence of death by drowning, thus distinguishing the case from the one at bar. The presumption against drowning having been suicidal was not rebutted by any evidence, but, on the contrary, was supported by undisputed testimony that the deceased had asked a friend to go rowing in a boat with him and have a nice pleasant time, that while rowing his hat fell into the water, that when he reached for it he fell into the water and hollered for help, and that thereafter he struggled and swam after the boat which kept getting away from him. Such proofs were utterly inconsistent with the theory of suicide and tended to establish death by accidental drowning. In the instant case there are no proofs or tes-

timony showing facts from which it could be inferred that death was by drowning and, next, that such drowning was accidental.

In *Turner* there was expert testimony from which it could reasonably be inferred that death resulted from head injuries which had been sustained after the deceased jumped on to an elevator. The question was whether he had jumped with intent to kill himself or with intent to catch the slow-moving elevator. The presumption against suicide was said to follow the showing (not made in the instant case) of death resulting from external, violent means. In applying the presumption in that case, however, this Court stressed the fact that there was no evidence tending to show suicide or that the deceased had any motive for or thought of committing suicide and, further, that there was nothing "relating to the manner in which the injury was sustained, to justify an inference of intent to commit suicide." On the contrary, testimony in that case showed that deceased was at his place of employment, changed his clothes in the dressing room provided for the purpose, and then jumped from the floor where he was at the time to a slow-moving freight elevator that was descending and had passed the floor by approximately 2-1/2 feet; that the elevator had wood panels along the sides, but was open at the ends; that it was loaded with ice cream pails, except for a narrow space on the edges. As viewed by this Court, a set of facts was presented from which the inference could reasonably be drawn that assured had jumped for the purpose of catching the elevator in order to descend to a lower floor, slipped, fallen and been accidentally killed. The instant case presents no testimony or showing of facts from which such an inference of accident could be drawn.

The 4 cases just considered are in no sense authority for the proposition that the burden, in the type

of case here presented, reposes on defendant to prove suicide or that plaintiff may escape the burden of proof resting on her to prove by a preponderance of the evidence that the death was accidental. Characteristic of each of the 4 cases, as distinguished from the case at bar, is the presence of evidence disclosing the means of death, a showing that it resulted from external, violent means and that it was accidental and, in addition, substantive evidence refuting the theory of suicide. A review of the cases in that light suggests the absence of necessity for resort to the presumption against suicide in any of those cases, although recognized in each of them. Plaintiff is not thus favorably situated in the case at bar.

Defendant contends that plaintiff has failed to sustain the burden of proof resting on her to establish that assured died as a result of bodily injuries sustained solely through external, violent and accidental means and that, therefore, she cannot recover. It relies on *Merrett* v. *Preferred Masonic Mutual Accident Association*, 98 Mich 338; *Dimmer* v. *Mutual Life Insurance Co., supra; Koycheff* v. *Mutual Benefit Health & Accident Assn.*, 305 Mich 660.

In *Merrett* this Court noted the different possible theories as to cause of death, that all were within the bounds of reasonable conjecture, with but little evidence to justify a jury in deciding which was the cause, and that what little there was favored the suicide theory and thereupon reversed the jury's finding, inconsistent with that theory, saying:

"Until there was some evidence tending to show that death resulted from accident, rather than from design or natural causes, such as apoplexy or heart failure, there was nothing to go to a jury. There was not a *prima facie* case of accidental death. The burden of proving accidental death is upon the plaintiff. Until some proof is offered tending to establish one of several equally reasonable theories, some

consistent with the theory of accidental death, and some inconsistent with it, a case is not made out."

In that case this Court, for the purpose of discussion, accepted as true plaintiff's theory of death due to violent, external means—an unnatural death—but declined to indulge the presumption against suicide, holding that there must be some affirmative evidence of accident to make a case for a jury.

In *Dimmer* the assured died from self-inflicted gunshot wounds. The question was whether it had been done accidentally or intentionally. Although the plaintiff showed absence of motive for suicide and that the gun could be discharged very easily by accident, this Court held the presumption against suicide rebutted by evidence that the assured, while dying, was asked, "Why he did it" and responded, "I am losing my home and losing my health. Get me a priest," and that, therefore, the burden remained on plaintiff to prove by a preponderance of the evidence that death was accidental and not caused by suicide. Having offered nothing more than the presumptions in that regard, plaintiff was denied recovery. In the case at bar there is no proof of death due to violent, external means or unnatural causes. Consequently, there is nothing upon which to base the presumption against suicide. Had it been applicable here, it would have ceased to exist and its weight as evidence have been dissipated the moment proofs were introduced concerning assured's physical condition, his recent treatment in the neuropsychiatric service at the hospital, and the strange events attending his unexplained early morning departure from home, disappearance and subsequent discovery without fishing equipment, boat, marks indicating accident or falling or slipping down steep banks, or any other physical fact pointing to acci-

dent or inconsistent with the coroner's original certification that the assured walked into the lake.

In *Koycheff* assured's dead body was found floating in a river. This Court held that in a suit on an accident insurance policy or double indemnity provision of a life insurance policy the burden of proving accidental death and negativing suicide is on plaintiff. Without so much as discussing the presumption against suicide, this Court held that, if it were assumed that assured died from drowning, plaintiff could not recover because the proofs were more consistent with the suicide theory than the accident theory. That is equally true here.

Plaintiff urges that the circuit court could not reverse the court of common pleas without an express finding that the evidence clearly preponderated the other way, citing *Michael* v. *Kircher,* 335 Mich 566. Whether the circuit judge expressly so found or not, his reversal will be upheld here, if, in our view, the evidence did clearly preponderate against the finding and judgment of the court of common pleas. In this case it must be held that the evidence did so preponderate when there was no evidence to establish a material element of plaintiff's case, namely, accidental death, and some evidence contra.

The judgment of the circuit court is affirmed accordingly, with costs to defendant.

ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.