BOOK FURNITURE COMPANY *v.* CHANCE.

1. APPEAL AND ERROR—COMMON PLEAS COURT—CIRCUIT COURT—SUPREME COURT.

Appeals to circuit court from the court of common pleas of Detroit are not to be tried *de novo* but are to be reviewed in the same manner, as near as may be, as cases appealed from the circuit court are now reviewed in the Supreme Court (CLS 1956, § 728.4; Court Rule No 77, as added in 1949).

2. SAME—COMMON PLEAS COURT—CIRCUIT COURT—EVIDENCE.

The circuit court on appeal to it from the common pleas court of Detroit should not reverse the judgment below on an evidentiary basis unless the testimony taken below clearly preponderates against the judgment entered or unless the facts found were contrary to the uncontroverted testimony (CLS 1956, § 728.4; Court Rule No 77, as added in 1949).

3. BANKRUPTCY—SALE OF GOODS PURCHASED UNDER TITLE-RETAINING CONTRACT.

Provisions of title-retaining contract that buyer agreed to keep goods in first-class condition and surrender possession when in default of "rent," and not remove goods from present address or endanger interest of lessor-seller and latter reserved right to vest title in lessee-buyer in event of default and sue for balance, must be construed together to determine whether buyer's sale after default and rejection of tendered return constituted a wrongful sale excepted from buyer-lessee's discharge in bankruptcy.

4. WORDS AND PHRASES—WAIVER—EVIDENCE OF INTENT.

Waiver is the intentional relinquishment of a known right and is effected by acts which indicate an intention to relinquish the right or by so neglecting and failing to act as to induce a belief that it was the intention and purpose to waive it.

5. SALES—TITLE-RETAINING CONTRACT—WAIVER OF RIGHT TO REPOSSESSION.

Evidence presented in action by seller under title-retaining contract for claimed tort of defendant purchaser in wrongful sale of the goods involved, brought in common pleas court of Detroit and appealed to the circuit court, *held*, to justify finding by both courts that plaintiff had waived its right to repossession, and that title had passed to the purchaser; hence the latter's subsequent discharge in bankruptcy precluded re-

REFERENCES FOR POINTS IN HEADNOTES
[2]  3 Am Jur, Appeal and Error §§ 900, 901.
[4]  56 Am Jur, Waiver § 2.
[5]  47 Am Jur, Sales § 970.
[6]  14 Am Jur, Costs § 92.

covery of judgment· herein (CLS 1956, § 728.4·; Court Rule No 77, as added in 1949).

6. Costs—Brief.

No costs are allowed appellee upon affirmance of a judgment, where he did not file a brief.

Appeal from Wayne; Culehan (Miles N.), J. Submitted April 9, 1958. (Docket No. 27, Calendar No. 47,493.) Decided June 11, 1958. Rehearing denied July 15, 1958.

Case by Book Furniture Company,. a Michigan corporation, against John T. Chance for value of goods which defendant disposed of allegedly in violation of the terms of title-retaining contract. Judgment for defendant. Plaintiff appeals. Affirmed.

*Meyer R. Rubin,* for plaintiff.

KAVANAGH, J. Plaintiff instituted suit in the common pleas court for the city of Detroit. In its declaration, plaintiff alleged an unlawful sale by the defendant of household furniture purchased and obtained from the plaintiff by said defendant under a title-retaining contract. It alleged that this wrongful sale destroyed the plaintiff's security; that a judgment based on this tort of defendant, committed against plaintiff, is excepted from a discharge in bankruptcy. Defendant alleged that the refusal of plaintiff's agent to accept the return of the goods operated to vest ownership and title of the goods in defendant, and established an open account relationship between plaintiff and defendant. He further alleged that the discharge in bankruptcy precluded recovery of any judgment.

The case came on for trial before Judge L. Eugene Sharp of the common pleas court, and a judgment of no cause of action was entered on April 8, 1954. Plaintiff made timely appeal to the circuit court for the county of Wayne. A complete transcript of testimony, as well as all papers filed in said cause,

were certified by Judge Sharp to the circuit court. Judge Miles N. Culehan affirmed the judgment of the lower court. Plaintiff appeals to this Court.

The question before this Court is: Was there testimony, at the trial in the common pleas court for the city of Detroit, from which Judge Sharp could find that plaintiff had waived its right to have a return of the goods; that title had passed to the defendant, and that plaintiff's only action was one of suing for the amount owing on the contract?

Plaintiff appellant claims there was no testimony that would justify such a finding. Defendant appellee has filed no brief in the cause and appears not to be represented at the present time.

Mr. Justice Voelker, writing for the Court, in the case of *Fruchter* v. *Martin,* 350 Mich 12, very ably outlined the question of appeals from the common pleas court of Detroit to the circuit court. In this case he states (p 15):

"We find that appeals to circuit court from the court of common pleas of Detroit are provided for by both general statute and court rule. The statute (CLS 1956, § 728.4 [Stat Ann 1955 Cum Supp § 27-.3654]) provides that all such appeals shall be regarded as appeals to a court of review instead of a trial *de novo,* and that upon appeal the case 'shall be reviewed in the same manner as near as may be, as cases appealed from circuit court are now reviewed in the Supreme Court.'"

Court Rule No 77* is to the same effect as CLS 1956, § 728.4 (Stat Ann 1957 Cum Supp § 27.3654).

This Court, as Judge Culchan, but unlike the *Fruchter* v. *Martin Case, supra,* has before it a stenographic transcript of the testimony taken in the trial before Judge Sharp.

---

* Added in 1949. See 326 Mich lvi.—Reporter.

This Court has held that upon appeals to circuit court from common pleas court, the circuit judge should not reverse the judgment below upon an evidentiary basis, unless the testimony taken below clearly preponderates against the judgment there entered (*Michael* v. *Kircher,* 335 Mich 566), or unless the facts found were contrary to the uncontroverted testimony (*Cummins* v. *John Hancock Mutual Life Insurance Co.,* 337 Mich 629).

It would appear that the function of the circuit judge in this instance was to review the testimony and to decide whether or not it supported Judge Sharp's opinion and judgment. This examination should be carried on in the same fashion as the Supreme Court does under like circumstances on appeal from the circuit court to this Court. *Berman* v. *Vigliotti,* 337 Mich 454; *Freedman* v. *Palmer Park Theater Co.,* 345 Mich 657. Judge Sharp found that the plaintiff waived his right to recover the goods, and elected to rely upon collection on the contract.

It would be necessary to examine the contract itself and the testimony of plaintiff's witnesses in order to determine whether or not the record justifies the conclusion reached by Judge Sharp. The contract which is before the Court at the present time differs from any of the title-retaining contracts previously passed upon by this Court, in that it contains the following paragraphs which must be read together:

"I, or we, agree to keep said goods in first-class condition, *surrender possession of same at expiration hereof, whenever I or we are in default of rent,* or shall remove said goods from present address or otherwise endanger the interest of lessor, and to pay legal or other expenses which said lessors may necessarily incur in regaining their possession of said goods." (Emphasis ours.)

"Lessors reserve the right in lieu of repossessing themselves of the goods as hereinbefore mentioned to vest title in the goods in the lessee in the event of default of lessee in the payments and to sue lessee for the unpaid balance."

These paragraphs raise a question as to whether defendant not only had a right but a duty upon default to offer to return the goods. This defendant admittedly did by telephone.

Mr. Louis Bloch, credit manager for plaintiff company, testified under direct examination to the following telephone conversation with the defendant:

"*Q.* And subsequent to the default did you contact John T. Chance?

"*A.* Yes, I did.

"*Q.* Did you discover—by the way, did you talk to John T. Chance?

"*A.* On several occasions.

"*Q.* Did you talk to him on the occasion when he asked you to pick up the furniture?

"*A.* Yes, I did.

"*Q.* Can you tell us the conversation that you had with him?

"*A.* Not by words exactly. We are not in a position to take furniture back. That isn't our position of selling merchandise. He didn't live up to his contract to take care of the account."

On cross-examination witness Bloch testified as follows:

"*Q.* And you refused to take it back at that time?

"*A.* I gave him to understand that the merchandise was purchased on the contract, and we expected him to hold to it.

"*Q.* You mean you expected him to pay the balance of the contract; is that correct?

"*A.* Yes.

"*Q.* And you are presently suing him for the balance due on the contract; is that correct?

"*A.* Yes."

It appears that the following conversation (from witness Bloch's testimony) between defendant's attorney, Dee Edwards, and witness Bloch occurred some time subsequent to December 23, 1953:

"*Q.* Do you know how much was due on the contract at the time he talked with you?

"*A.* No, I don't know offhand.

"*Q.* Do you recall telling me that you did not want to take back the furniture at the time because you could not sell it for the balance that was due?  *  *  *

"*A.* I felt that we weren't in a position, as used furniture, to take it back at such a loss. *We refused to take it back.*"  (Emphasis ours.)

The only other testimony was that of plaintiff's witness Mr. Al Greenfield, who testified that he was a salesman as well as a collector for the plaintiff company; that either in November or December of 1953 he was at defendant's premises; that he had been furnished a list of the material sold under plaintiff's title-retaining contract. On direct examination, he was asked this question:

"*Q.* Did you see the furniture in the premises?

"*A.* I did."

Subsequently, under direct examination, he was asked the following questions, and made the following answers:

"*Q.* What was the value of the merchandise on that occasion in November, 1953?

"*A.* I don't know the approximate value. It would go about $250.

"*Q.* $250?

"*A.* Yes.

"*Q.* The merchandise that was in his possession?

"*A.* Yes."

Waiver is the intentional relinquishment of a known right. 40 Cyc, p 252. The usual manner of

waiving a right is by acts which indicate an intention to relinquish it (40 Cyc, p 265), or by so neglecting and failing to act as to induce a belief that it was the intention and purpose to waive.   27 RCL, p 911; *Bailey* v. *Jones,* 243 Mich 159.

It would appear that the above, coupled with the other testimony, would be sufficient for either court to find that plaintiff had waived its right to recover possession of the goods, had passed title to the defendant, and that the only action they might have would be one in assumpsit for payments due on the contract itself.   The only testimony to the effect that defendant had sold the property was a comment by Mr. Bloch that in the telephone conversation, in which he advised defendant's attorney that they did not care to take the property back, defendant's attorney advised him that the property had been sold. This hardly coincides with the testimony of Mr. Greenfield that the defendant had the property in November or December of 1953 when he visited defendant's premises.   He further testified:

"*Q*. Mr. Greenfield, when you made a demand for the furniture, did they tell you it belonged to somebody else?

"*A*. At one time they told me they had the furniture in storage.

"*Q*. At the time they had this merchandise, did they tell you that this merchandise you made a demand for belonged to somebody else?

"*A*. They did not."

Judge Sharp in common pleas court heard the witnesses testify and came to the conclusion that title passed.   Judge Culehan, on reading the stenographic record of the testimony, reached the same conclusion.   This Court feels from a reading of the testimony that they reached a correct conclusion.

Decision of the lower court is affirmed. No brief having been filed by appellee in this Court, no costs are being allowed.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.